## Staunton.

## YOUNG, ADMINISTRATOR, AND OTHERS, V. BOWEN, GUARDIAN, AND OTHERS.

### September 22, 1921.

1. APPEAL AND ERROR—*Report of Master—Weight of Report.*—In an action to surcharge and falsify the accounts of an administrator, where the evidence was taken by a master, and as to many of the items was conflicting, and the master's findings were sustained by the trial court, such findings, as a rule, will not be disturbed by the appellate court. But where the findings of the master appear to be plainly wrong, this rule, of course, has no application.

2. ACCOUNTS AND ACCOUNTING—*Presumption in Favor of Settlement by Commissioner of Accounts—Burden of Proof in Proceeding to Surcharge and Falsify.*—The *ex parte* settlements of the commissioner of accounts are presumed to be correct until surcharged and falsified (Code 1919, sec. 5429), and not only the duty of specifying errors, but also the *onus probandi*, devolves on the party complaining.

3. EXECUTORS AND ADMINISTRATORS—*Representative Exceeding Authority—Rent Received from Unauthorized Improvements.*—An administrator, without authority, used the funds of the estate to erect a storehouse on the land of the decedent, which was subsequently destroyed by fire. But before the storehouse was burned the beneficiaries of the estate collected the rents therefrom.

    *Held:* That the administrator was properly charged with the principal and interest on the fund diverted to the erection of the storehouse from the date of the diversion, but should be credited by the amount of the rents collected by the beneficiaries.

4. EXECUTORS AND ADMINISTRATORS—*Surcharging and Falsifying Accounts—Item Improperly Charged Against the Administrator.*—Where in a proceeding to surcharge and falsify the accounts of an administrator, the master failed to credit the administrator with an item with which he had been improperly charged in his *ex parte* settlement, and this mistake was called to the attention of the court by the administrator's answer,

26

which he prayed to be read as a cross-bill, and which was not answered by the complainants in the original bill, the cause should be referred back to the master to correct the mistake.

5. SURETYSHIP—*When Surety Entitled to Judgment Against Cosureties.*—A surety is not entitled to a judgment against his cosurety until he has paid more than his part of the debt of the principal.

6. SURETYSHIP—*When Surety Entitled to Judgment Against Cosureties—Amount of Decree by Appellate Court.*—In a suit to surcharge and falsify the accounts of an administrator, the widow of decedent was a party complainant and was also one of the sureties on the administrator's bond. While the widow might be entitled, under these circumstances, to a decree against the administrator, she was not entitled to a decree against her cosureties, as her cosureties might have to pay the full amount of the decrees in favor of the other heirs and distributees. In such case where the decree was in favor of the widow against her cosureties, the Supreme Court of Appeals could not correct the decree, as the record did not show what each child was entitled to, and it was necessary to restate the account of the aministrator.

Appeal from a decree of the Circuit Court of Scott county. Decree for complainants. Defendant appeals.

*Reversed.*

The opinion states the case.

*W. S. Cox* and *S. H. Bond,* for the appellants.

*Coleman & Carter,* for the appellees.

BURKS, J., delivered the opinion of the court.

This is a suit by the widow and distributees of J. F. Chesser to surcharge and falsify the *ex parte* accounts of P. C. Young as administrator of the estate of the said J. F. Chesser. The cause was referred to a master to take evidence and restate the accounts, by a decree rendered in June, 1911, but the master did not make his report till September, 1917. To this report there were sixteen ex-

ceptions by the administrator. At the September term, 1918, the circuit court overruled all of said exceptions, and entered the decree appealed from.

[1] The petition for the appeal assigns fourteen errors to the rulings of the trial court, and some of the assignments embrace numerous items. Except as hereinafter stated, the findings of the master are approved. The findings of the master were based on the testimony of sundry witnesses, and it would not be profitable to discuss in detail the reasons for sustaining the findings of the master which were approved by the trial court. The evidence was taken by the master, and, as to many of the items, was conflicting. In such case, his findings sustained by the trial court will not, as a rule, be disturbed by this court. *Smiley* v. *Smiley,* 112 Va. 490, 71 S. E. 532, Ann. Cas. 1913-B 1154. But some of the findings of the master appear to be so plainly wrong that we cannot give them our approval.

The master charged the administrator with the price of a saw, $125.00, and interest thereon, $126.25. It satisfactorily appears that this saw went with the sawmill as a part thereof, and the estate got the benefit of it in the price paid for the sawmill. While there is some slight evidence tending to show that the saw did not go with the mill, the great weight of the evidence is to the contrary, and there is no evidence that the administrator derived any benefit therefrom.

The administrator is also charged by the master with $82.75 principal and $30.82 interest on the same, for excess payment to Elizabeth Chesser. The evidence to sustain this charge is the testimony of Elizabeth Chesser, is very brief, and is as follows:

"Q. 9. You speak of P. C. Young, administrator, having collected $82 and some cents, amount overpaid by him. You and P. C. Young, J. D. Carter and Reese Bowen, guardian,

went over the account of P. C. Young, administrator, with a view to making a settlement, and did not P. C. Young, Reese Bowen, guardian, come to Gate City and get the commissioner of accounts to make the settlement, and then reported to you that the amount overpaid was $82.75?

"A. Yes, sir. That is what they reported.

"Q. 10. Do you remember whether Reese Bowen, guardian, was present when you refunded to P. C. Young the amount you speak of?

"A. P. C. Young owed me some; he retained the $82.75 out of the amount he owed me. Reese Bowen was present when the settlement. was made."

[2] This was not sufficient to sustain the charge made by the master. It does not appear therefrom that the estate of the intestate was in any way affected by the refund. Furthermore, the settlement was made by the commissioner of accounts, and it is to be presumed that if it was proper to make a charge therefor against the administrator he would have done so. The *ex parte* settlements of the commissioner of accounts are presumed to be correct until surcharged and falsified (Code, sec. 5429), and "not only the duty of specifying errors, but also the *onus probandi* devolves on the party complaining. *Peale* v. *Hickle*, 9 Gratt. (50 Va.) 445; *Corbin* v. *Mills*, 19 Gratt. (60 Va.) 438." See notes to section 5429 of Code.

[3] The master failed to allow the administrator any credit for rent received by the widow and the guardian of the infant distributees from a storehouse erected by him out of funds of the estate on land of the decedent. The administrator, without authority, used funds of the estate to erect the storehouse, which was subsequently destroyed by fire. He had no authority to thus use the funds of the estate, and the master properly charged him therewith, but before the storehouse was burned, the widow and guardian collected rents therefrom amounting to $401.25. To this extent, they profited thereby, and the administrator should have had

credit therefor. Counsel for the appellee surmise that the master did not compute interest on the amount invested during the time that the widow and guardian were collecting the rents, but there is no evidence of this fact. It is a mere surmise. The administrator should be charged with the principal and with interest on the fund diverted from the date of the diversion, and credited by the $401.25 collected from the rents.

[4] The master failed to credit the administrator with $518.83 principal and $50.06 interest, with which he had been improperly charged in his *ex parte* settlement. This mistake had been called to the attention of the court by the administrator's answer which he had prayed to be read as a cross bill, and which was not answered by the complainants in the original bill. The item appears in the *ex parte* settlement as follows: "1902, September 15th, to amount of account of J. F. Chesser, due Chesser and Young for estate, $518.83; interest on same, April 24, 1904, $50.06." It seems very plain that a debt due by Chesser could not be charged to his administrator as an asset received by the latter. The cause should be referred back to a master to make these corrections.

Assignments of error 12, 13 and 14 are as follows:

"12th. The court erred in giving judgment against your petitioners, W. P. Peterson and I. P. Robinett, they only being co-sureties on the bond of P. C. Young along with Elizabeth Chesser, one of the plaintiffs in the case. Under the pleadings in the case and the proof it was error to give judgment against your two petitioners."

"13th. Your petitioners, I. P. Robinett and W. P. Peterson allege and represent that there is error against them, even if there is no other error in the case, in rendering judgment against them in favor of Reese Bowen, guardian, and not also including Elizabeth Chesser along with them in said judgment. Elizabeth Chesser was co-surety with

your petitioners, she was liable jointly with them on the bond, and it is certainly error to give judgment against two of the sureties on the bond and not include all three when they are all before the court."

"14th.    The court erred in rendering judgment against your petitioners, I. P. Robinett and W. P. Peterson, in favor of Elizabeth Chesser for the full amount found due her. If Elizabeth Chesser is due the amount found by the commissioner to be due to her, your petitioners, as co-sureties with her, would only be liable to Elizabeth Chesser for two-thirds of the amount due her.    Here we have a judgment against two co-sureties in favor of the third co-surety for the full amount of the debt found to be due the co-surety by the principal in the case."

In reply, counsel for the appellee say:

"We admit that the lower court erred in the particulars stated in these assignments of error by appellants.    But we assume that this honorable court will, in this respect, modify the decree of the lower court and in all other respects affirm the same."

[5-6] We are unable to make the desired correction in the present condition of the record. J. F. Chesser died intestate, leaving a widow and six children, and his widow is one of the three sureties on the administrator's bond. His widow, three adult children, and the guardian of the other three are the complainants in this suit.    All of the children are now of age, and each is entitled to a decree for his or her share of the estate.    The record does not show what each child has received.    It will be necessary to restate the account of the administrator to ascertain with what sum he is chargeable in conformity with this opinion, and also to state a distributees' account to ascertain definitely how the balance found against the administrator is to be distributed among the several distributees.    When these facts are ascertained, each child will be entitled to a decree in his or her

favor against the administrator and the sureties on his bond for the amount ascertained to be due to him or her; but the widow, Mrs. Elizabeth Chesser, is not entitled to any decree against her co-sureties in the present state of the record. It may be that her co-sureties will have to pay the full amount of the decree in favor of the children, and this may result in their having a claim against her, instead of being indebted to her. She can have a decree against the administrator, but not against her co-sureties at the present time. A surety is not entitled to a judgment against his co-surety until he has paid more than his part of the debt of the principal. *Davies* v. *Humphreys,* 20 Eng. Rul. Cas. 632, 21 R. C. L. 1134; 1 Barton Law Pr. (2nd Ed.) 106, and cases cited.

The decree of the circuit court will be reversed, and the cause remanded with direction to make the inquiries hereinbefore mentioned, and to settle the rights of the parties in accordance with the views hereinbefore expressed.

*Reversed.*