# Staunton

W. J. COUNTS, ET ALS. V. RICHARD L. COUNTS,
EXECUTOR, ET ALS.

September 19, 1935.

Present, Holt, Hudgins, Gregory, Browning, Chinn
and Eggleston, JJ.

The opinion states the case.

*E. J. Sutherland* and *G. Mark French,* for the appellants.

*S. H. & George C. Sutherland* and *A. A. Skeen,* for the appellees.

HOLT, J., delivered the opinion of the court.

J. C. Counts executed his last will and testament on May 27, 1899. He died in June following, leaving to survive him his widow and six children, Walter James Counts, who was born February 28, 1885; Emma Counts, who was born March 20, 1887; Susan C. Counts, who was born May 6, 1889; Rufus Ayers Counts, who was born February 3, 1891; Oscar Hawkins Counts, who was born February 3, 1893, and Wilson Evans Counts, who was born December 17, 1897.

This will, which was duly probated, contains these provisions for the plaintiffs.

"SIXTH: I will and bequeath to my dear son, Oscar, a tract of land on Lick Creek in Dickenson county, Va., con-

taining 137 acres, more or less, adjoining the land of J. W. Counts, E. S. Counts and others; my dear wife Mary Ann is to have the rents and profits, and control of this tract of land until she marries again, or should die, up and until my dear son Oscar becomes twenty-one years of age.

"SEVENTH: I will bequeath to my dear Walter, Rufus and Oscar, $300 each to be paid to them by my executor; out of my money, debts and choses in action at the time they administer at the age of twenty-one years.

"EIGHTH: I will and bequeath to my dear son Wilson, $500 to be paid out of my money and incomes from my debts, and choses in action, to be paid to him when he attains the age of twenty-one years.

"NINTH: I will and bequeath to my dear daughters Emma and Susan, $250 to be paid to them by my executor out of the money that may go into his hands to be paid to them, when they attain the age of twenty-one years.

"TENTH: I will and bequeath to my dear mother Catherine Counts, $100 to be paid to her by my executor out of the money that goes into his hands to be paid immediately after my death.

"ELEVENTH: I will that my executor hereinafter to be appointed shall rent my house and lot in the town of Clintwood, Va., until such time as he can make *advatagains* sale of said house and lot and convenant the same into money to be distributed as hereinbefore set out as my money debts and choses in actions above names.

"TWELFTH: My will is that if my money debts and choses in actions and the rents and money arising from the sale of my house and lot in the town of Clintwood, Va., should not be sufficient to fully pay all the bequeathful made thou the payments, are to be made in proportion to the bequeath herein made and if any moneys, debts, choses in action and money arising from the sale of the aforesaid house and lot should exceed the bequeath herein made then each bequeath is to be increased in proportion to the bequeaths herein made."

Richard L. Counts, a brother of this decedent, was named as executor, qualified as such, and gave bond in the sum of $6,000.00 of date July 11, 1899, with E. K. Counts, E. S. Counts, Sr., J. C. Smith, S. P. Buchanan, and J. M. Colley as his sureties.

Afterwards, for some reason not shown by the record, and on June 9, 1901, he gave another executorial bond in the same sum with E. S. Counts, I. E. French, Henry Keel and B. O. Wampler as his sureties.

This executor made these *ex parte* settlements:

"Settlement No. 1, made Dec. 12, 1899; No. 2, made Dec. 10, 1900; No. 3, made April 10, 1901; No. 4, made Feb. 10, 1902; No. 5, made April 14, 1903; No. 6, made July 27, 1904; No. 7, made Nov. 28, 1905; No. 8, made July 25, 1906. These settlements all appear to have been confirmed July 7, 1907. No. 9, made July 25, 1907; confirmed March 18, 1908. No. 10, made March 10, 1909; confirmed July 7, 1909; No. 11, made Aug. 1, 1910; No. 12, made Feb. 25, 1911; No. 13, made May 23, 1912. None of these last three settlements are confirmed. No. 14, made June 10, 1914; confirmed March 15, 1915. No. 15, made March 8, 1917; not confirmed. No. 16, made Sept. 25, 1920; confirmed March 18, 1921. No. 17, made January 31, 1921; confirmed March 18, 1921."

Why all of them were not confirmed does not appear. The probability is that it was a simple oversight.

This is not a matter of importance, for settlements to which there were no objections stood confirmed at the expiration of thirty days. Session Acts 1904, ch. 152, page 267. And this continued to be the law, until March 28, 1922. Session Acts 1922, ch. 503, page 873.

The executor paid all specific bequests and there was in his hands after such payments as of January 31, 1921, $1,661.91, all of which appeared in the seventeenth and last *ex parte* settlements.

This suit was instituted in September, 1924. The purpose of the original bill was to have this balance distributed among the parties entitled thereto.

By way of explanation and of excuse for his delay, the executor said that he had invested it in real estate near the city of Roanoke, and that due to causes over which he had no control he had been unable to reconvert it into cash.

█ █ It was put into a fruit farm. Title was taken in the name of Richard L. Counts, and this Roanoke county land was afterwards traded for a half interest in four Roanoke city lots. Title to it, too, was taken in the name of Richard L. Counts. Mr. Counts said that he intended to have this changed but forgot. His evidence also is to the effect that all done was done under the advice of counsel. However that may be, an executor unless authorized by will or by order of court has no power to purchase real estate. 11 R. C. L., page 146. This investment though made in good faith, was unauthorized and the trial court very properly refused to accept it.

On March 29, 1927, judgment was entered in favor of the plaintiffs against Richard L. Counts for said sum of $1,664.90 with interest from the thirty-first day of January, 1921, and this cause was referred to a Master Commissioner with directions to report how this recovery should be distributed and to what extent the bondsmen should contribute if called upon to contribute. In other words, these plaintiffs were given all that they asked for in their original bill.

Plaintiffs, with the permission of the court, filed an amended bill on July 22, 1927, and afterwards asked permission to add another item thereto of $350.00 said to have been received by the executor from the sale of the Ira Vanover House in Clintwood.

The plaintiffs seek to falsify the executorial accounts in these particulars. They say that the executor has not charged himself with said $350.00 item. The record does not support them.

They say that he has taken credit for more commissions than he is entitled to receive. The record does not sup-

port these charges. This brings us to the major controversy in this cause.

It is said that expenditures should have been charged against accrued interest and not against the principal and that the executor should be treated as a *quasi* guardian and made to pay compound interest. On the other hand, the defendant contends that these *ex parte* accounts are based upon proper principles and follow the rules enunciated in this court in *Granberry's Ex'r* v. *Granberry,* 1 Wash. (1 Va.) 246, 1 Am. Dec. 455, and in *Burwell's Ex'rs* v. *Anderson,* 3 Leigh (30 Va.) 348.

We start out with the proposition that *ex parte* settlements, duly confirmed, are presumed to be correct.

"The *ex parte* settlements of the commissioner of accounts are presumed to be correct until surcharged and falsified (Code, sec. 5429), and 'not only the duty of specifying errors, but also the *onus probandi* devolves on the party complaining. *Peale* v. *Hickle,* 9 Gratt. (50 Va.) [437] 445; *Corbin* v. *Mills' Ex'rs,* 19 Gratt. (60 Va.) 438.' See notes to section 5429 of Code." *Young* v. *Bowen,* 131 Va. 401, 108 S. E. 866, 867.

These settlements have in substance been twice confirmed,—once by Judge Burns, now dead, decree of March 29, 1927, and again by his successor, Judge Lively, by decree of October 24, 1933.

It must be conceded that they are fragmentary. The record itself is fragmentary. Settlements show payments in detail, amounts, dates and to whom made. They show gross receipts, but neither dates nor amounts. Investments were made and interest collected, but the details of these transactions are wanting. This, however, does we think appear: They are not tainted by fraud, nor is there anything to show that this executor was at any time influenced by improper motives.

It is not contended by him that the rule in *Granberry's Ex'r* v. *Granberry, supra,* and in *Burwell's Ex'rs* v. *Anderson, supra,* is inflexible. In dealing with fiduciary accounts the peculiar circumstances of each case affect the

manner in which accounts should be stated, *Crigler's Committee* v. *Alexander's Ex'r,* 33 Gratt. (74 Va.) 674. But they do tell us of the general rule and its inapplicability must be shown by him who challenges it. We should be slow to upset honest settlements which have stood unquestioned for fifteen or twenty years, and this is true even though the statute of limitations does not run against infants.

Since the plaintiffs take nothing under their amended bill which had not been decreed to them before it was filed, the court very properly directed that they pay such costs as it has necessitated.

It is not necessary that we consider in detail cross-assignments of error. They are covered by what has been said. The decree of October 24, 1933, should be affirmed, and it is so ordered.

*Affirmed.*